UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| KAREN RAYFIELD, | |
| Plaintiff, | |
| v. | Civ. Action No. 06-2126 (KSH) |
| CITY OF PATERSON, et al., | |
| Defendants. | **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Plaintiff Karen Rayfield ("Rayfield"), a police officer for the City of Paterson Police Department, has filed suit alleging that the City of Paterson, Paterson Police Chief James Witting, Paterson Police Officers Jason Wester ("Wester"), Michael Avila, Martin Luizzi ("Luizzi"), Jose Galvan ("Galvan"), Franco Caravella ("Caravella"), Richard Latrecchia ("Latrecchia"), Spencer Finch ("Finch"), Paterson Police Lieutenant Dominick Torcha ("Torcha"), and Paterson Police Sergeant DeMarco ("DeMarco") (collectively, "defendants"), unlawfully retaliated against her after she filed a report with Internal Affairs and the State Attorney General that fellow officers had unjustifiably beaten a burglary suspect. Defendants have moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the motion is **denied**.

I.    FACTUAL BACKGROUND

The following factual background is established from the amended complaint.[1]

Rayfield has been employed as a police officer for the City of Paterson Police Department for approximately ten years. On March 16, 2006, at roughly 3:32 a.m., she reported to the location of a burglary in progress in Paterson. Shortly after joining other officers already on the scene, Rayfield observed the burglary suspect fleeing the scene. She and the other officers chased him on foot through several residential backyards and over several fences, and eventually cornered him.

The suspect initially resisted arrest, but Rayfield managed to handcuff him after her fellow officers restrained him. After the handcuffs were on, she observed Luizzi kick the suspect multiple times in his side. She then observed Galvan give him several punches in the face while Wester had him in a stranglehold. Rayfield urged her fellow officers to stop, pointing out that the suspect was not resisting. The defendant officers ignored her and pulled the suspect to his feet, whereupon Caravella began punching him in the chest while other officers yelled profanities.

Rayfield saw that the suspect was bleeding and again urged the officers to stop their assault and place him in her patrol car. The defendant officers ignored her and punched the suspect in the face, and when he fell down they kicked him several more times. When Latrecchia and Finch arrived on the scene, they struck the suspect several more times and then placed him in an unmarked police vehicle.

Rayfield alleges that immediately after the suspect was taken away, the other officers treated her harshly, including threatening her and calling her a "coward" by Luizzi. (Am.

---

[1] Rayfield filed an amended complaint on December 28, 2006 after Magistrate Judge Patty Shwartz granted her leave "to clarify [her] contentions concerning the speech she claims was protected and what role she contends that she played when she engaged in such speech." (Order dated Dec. 8, 2006, docket entry # 9.)

Compl. ¶ 43.) She reported this hostility to her supervisors, Torcha and DeMarco, but they failed to take any action. Torcha cautioned her to be careful about the contents of the police report she was required to file because "things around here could get out of hand." (Am. Compl. ¶ 46.) DeMarco suggested that she had perhaps not seen the entire incident and threatened to write her up for dereliction of duty if she disclosed the beating in her official report.

As a result, Rayfield initially filed a report on March 16, 2006 that did not fully disclose all of the events that had occurred early that morning. However, she had second thoughts, and later that day she sent a letter to the New Jersey Attorney General's Office that gave a full account of what she witnessed.

A week later, on March 23, 2006, Rayfield gave another full account of the events of March 16th to the Paterson Police Department's Internal Affairs Division. Later that day, a Detective Castro[2] told Rayfield that she might not be "cut out for this job." (Am. Compl. ¶ 52.) Also on March 23rd the Police Department placed her on Administrative Leave.[3] On April 13th, the Police Department ordered her to undergo psychological evaluation to determine her fitness for active duty. Since that time, Rayfield alleges a consistently hostile work environment caused and perpetrated by the defendants.

The amended complaint includes three counts: (1) a claim brought pursuant to 42 U.S.C. § 1983 that defendants violated Rayfield's First Amendment rights by retaliating against her for engaging in protected speech; (2) defendants retaliatory actions against Rayfield violated the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 et. seq.; and (3) defendants retaliatory actions against Rayfield violated the New Jersey Law Against

---

[2] Officer Castro is described as threatening Rayfield but does not appear as a defendant in this case.
[3] The complaint does not specify the duration of this administrative assignment.

Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 et. seq. Defendants have moved to dismiss the amended complaint in its entirety for failure to state a claim upon which relief can be granted.

## II.   JURISDICTION AND STANDARD

The Court has jurisdiction of Rayfield's § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

Rule 12(b)(6) permits a defendant to move for dismissal of the complaint "for failure to state a claim upon which relief can be granted." When deciding a motion to dismiss, the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).

## III.   DISCUSSION

Jurisdiction in this Court arises from one count in the amended complaint that makes a federal claim, to wit, violation of Rayfield's First Amendment rights by retaliation for engaging in protected speech. The Court will address defendants' motion with respect to the sufficiency of that count.

The Supreme Court recently reaffirmed the concept that "public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006). A public employee establishes a § 1983 claim for First Amendment retaliation if: "(1) . . . the activity in question is protected by the First Amendment, and (2) . . . the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The first inquiry is a question of law, while the second is a question of fact to be decided by a jury. Id. Thus, the threshold issue

4

for purposes of this motion is whether the speech in question is protected by the First Amendment.

The First Amendment protects public employees from retaliatory conduct based on their speech so long as (1) the statement was made by the employee acting as a citizen, (2) the speech related to a matter of public concern, and (3) the employer did not have "'an adequate justification for treating him[/her] differently from any other member of the general public as a result of the statement he made.'" Id. at 241–42 (quoting Garcetti, 126 S. Ct. at 1958). The purpose of this rule is to prevent public employees from "constitutionaliz[ing] the employee grievance." Connick v. Myers, 461 U.S. 138, 154 (1983). If the employee's expression was not undertaken as a citizen, or if the content of the employee's expression does not relate to a matter of public concern, the inquiry is over: the speech is not protected by the First Amendment. Garcetti, 126 S. Ct. at 1958 (declaring that "[i]f the answer [to the question of whether the employee spoke as a citizen on a matter of public concern] is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech"); Connick, 461 U.S. at 147 (stating that "when a public employee speaks not as a citizen upon matters of public concern . . . , a federal court is not an appropriate forum [for] review"). In Garcetti, the Supreme Court clarified that "when public employees make statements <u>pursuant to their official duties</u>, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. at 1960 (emphasis added).

Defendants argue that Rayfield's First Amendment claim fails as a matter of law because the speech at issue was made in the course of her official duties as a police officer, not as a citizen commenting on matters of public concern.

5

In <u>Garcetti</u>, the plaintiff, a deputy district attorney, circulated an internal memo criticizing the affidavit used to obtain a search warrant and eventually offered testimony consistent with the contents of the memo at a suppression hearing. 126 S. Ct. at 1955–56. Subsequently, he was reassigned and denied a promotion, prompting him to file a First Amendment claim. <u>Id.</u> at 1956. The Supreme Court rejected the claim, holding that because the memo was written pursuant to the plaintiff's official job responsibilities, it was not protected by the First Amendment. <u>Id.</u> at 1960. Significantly, in view of the issues before this Court, the Supreme Court did not enumerate specific factors that lower courts should consider when determining whether speech was made in the course of a public employee's official duties. There was no need to, because the plaintiff had stipulated that the speech in question was made "pursuant to his employment duties." <u>Id.</u> at 1961. The Court stated generally that "[t]he proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." <u>Id.</u> at 1961–62. The Court also stated that whether the employee "expresses his views inside his office, rather than publicly, is not dispositive." <u>Id.</u> at 1959. What can be drawn from this, it would appear, is that surface factors (place, job descriptions) are not outcome determinative.

Third Circuit case law since <u>Garcetti</u> has not focused on specifics or a formula. In <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 242 (3d Cir. 2006), the first Third Circuit case to apply <u>Garcetti</u>, there was a stipulation that the plaintiff's speech was made "pursuant to his official duties." The only other Third Circuit opinion to date applying <u>Garcetti</u>'s "official duties" language, <u>Muzslay v. City of Ocean City</u>, No. 05-1335, 2007 U.S. App. LEXIS 7311 (3d Cir.

6

Mar. 29, 2007), is an unpublished, non-precedential opinion affirming a district court's grant of summary judgment to the defendant. The Muzslay court summarily found that the plaintiff had acted in his official duties but did not explain the reasons for its finding.

Courts in this district have cited Garcetti's "official duties" language in dismissing First Amendment retaliation claims, but each judge dismissed at the summary judgment phase and had the benefit of discovery. Myers v. County of Somerset, No. 04-6362, 2007 U.S. Dist. LEXIS 42170 (D.N.J. June 11, 2007) (Cooper, J.); Burns v. Borough of Glassboro, No. 05-3034, 2007 U.S. Dist. LEXIS 42069 (D.N.J. June 11, 2007) (Simandle, J.); Bland v. Winant, No. 03-6091, 2007 U.S. Dist. LEXIS 31094 (D.N.J. Apr. 27, 2007) (Chesler, J.); Hogan v. Twp. of Haddon, 04-2036, 2006 U.S. Dist. LEXIS 87200 (D.N.J. Dec. 1, 2006) (Simandle, J.).

Here, the amended complaint explicitly alleges that Rayfield, "though still fearful of retaliation, felt that the actions of Defendants were improper and that it was necessary for her, **as a citizen**, to disclose the illegal and improper acts of the Defendant Police Officers in severely beating the suspect without any cause." (Amended Compl. at ¶ 49) (emphasis in original). The characterization "as a citizen" is bare and conclusory, but the Court is unwilling to say that plaintiff needs to plead more facts, given the reported cases since Garcetti, which to date rely either on stipulations or an examination of a summary judgment record. Without the benefit of any discovery, this Court is being asked to rule that Rayfield was acting within her official duties when she wrote the Attorney General and sought the intervention of Internal Affairs. Recalling the caution in Garcetti that job descriptions and place of utterance are not determinative, this Court is hard-pressed to dismiss without a record as to what Rayfield's duties were and how this activity of writing the Attorney General and reporting to Internal Affairs after pressure from her

direct supervisors to withhold her version of events, falls within and not outside of them.[4] Defendants' motion to dismiss Count One of the amended complaint is **denied**.

Defendants have also moved to dismiss the CEPA and NJLAD claims (Counts Two and Three, respectively) arguing that the retaliatory conduct Rayfield alleges is insufficient to warrant a claim under either statute. These claims arise out of the same alleged course of conduct and are sufficiently pleaded to permit discovery to go forward.

## IV.  CONCLUSION

For all the foregoing reasons, defendants motion to dismiss is **denied**.

Dated: August 16, 2007                                 /s/  Katharine S. Hayden

                                                                          Katharine S. Hayden, U.S.D.J.

---

[4] In Burns, Judge Simandle was able to rely on deposition testimony and official police department policies before concluding that a police officer's statements made to an internal affairs investigator were made pursuant to his official duties as a police officer. Burns, 2007 U.S. Dist. LEXIS 42069, at *21–23. To make such a conclusion here is impossible.